James A. DOWLING

v.

STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued June 21, 1984.

Decided July 26, 1984.

Collins Crandall & Hanscom, P.A., Wayne R. Crandall (orally), Rockland, for plaintiff.

Polly Haight Frawley (orally), Jerome S. Matus, Asst. Attys. Gen., Bureau of Taxation, Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Plaintiff James A. Dowling appeals from an order of the Superior Court (Knox County) upholding with modifications an assessment of use tax imposed against him by defendant State Tax Assessor. On appeal Dowling contests the Superior Court's determination that he did not qualify for either of the two use tax exemptions provided by 36 M.R.S.A. § 1764 (1978). We deny the appeal.

Dowling, a commercial airline pilot, has for more than four years conducted a fixed-base operation [1] at Owls Head Airport, selling, leasing, maintaining, and repairing airplanes. He is registered with the State Tax Assessor as a seller pursuant to 36 M.R.S.A. § 1754 (1978 & Supp.1983–1984).

In May 1978 Dowling purchased a Cessna 185 Skywagon for a price of $52,767.33, and in September of the same year he purchased a Beechcraft Baron for $160,-000, paying no use or sales tax on either purchase. Dowling leased both aircraft to his wholly owned corporation, Omni Leasing, Inc., each for an irrevocable five-year term. The lease of the Cessna to Omni commenced May 1, 1978. On that date Omni subleased the Cessna to Seacoast Airways, Inc., for an identical irrevocable five-year term. The lease of the Beechcraft to Omni commenced October 1, 1978, at which

---

1. A fixed-base operation is a business, usually located at an airport, serving general aircraft-re-  lated needs.

time Omni subleased the Beechcraft to William Perry, d/b/a Maine Instrument Flight School, by a one-year lease containing provision for three one-year renewal terms.

On June 26, 1979, the State Tax Assessor assessed a use tax of $11,178.50 plus interest against Dowling on the two aircraft.[2] Dowling exercised his right to request a reconsideration hearing pursuant to 36 M.R.S.A. § 151 (Supp.1983–1984). Following the hearing, the State Tax Assessor confirmed the assessment.

On September 24, 1979, Dowling filed suit in the Superior Court pursuant to 5 M.R.S.A. § 11001 *et seq.* (1979 & Supp. 1983–1984) (Administrative Procedure Act) and 36 M.R.S.A. § 151, seeking a hearing *de novo* on the assessment of use tax. A nonjury hearing was held on May 31, 1983. In the Superior Court, as here on appeal, Dowling based his argument for nontaxability solely on 36 M.R.S.A. § 1764.[3] Dowling testified that he had purchased the aircraft with the intent to resell and thus should be exempt from use tax. The trial justice filed an order finding that Dowling held the planes "on his own account as lessor, rather than as holder for resale," and also ruled that Dowling's leases to his corporation did not constitute sales. He thus concluded that Dowling could not claim either of the two exemptions from use tax found in 36 M.R.S.A. § 1764.

However, the trial justice, resolving a dispute about the proper amount of a trade-in credit Dowling had received when purchasing the Baron, reduced the assessment to $9,678.50, and charged statutory interest from the date of the assessment until the date of payment in full thereof. Dowling appeals from that order.

36 M.R.S.A. § 1861 (1978)[4] provides that a tax must be paid on the "use or other consumption in this State of tangible personal property, purchased at retail sale, at the rate of 5% of the sale price." As the statutory language indicates, the use tax is normally imposed only upon personal property bought at a retail sale. With 36 M.R.S.A. § 1764, the legislature has broadened the reach of the use tax (as well as the sales tax) so that it also includes motor vehicles and aircraft bought in "casual sales"[5] or "isolated transactions." However, that provision imposes no tax in two circumstances: 1) where the motor vehicle or aircraft is purchased for purposes of resale, or 2) where a seller in an isolated transaction sells a motor vehicle or aircraft to a corporation in which he or she holds the majority interest. Thus, in the special case of a motor vehicle or aircraft, a use tax is imposed whether the item was purchased in a retail sale or in an isolated transaction, *unless* a statutory exception applies. Dowling contends that the two exceptions contained in section 1764 apply

---

**2.** Penalties of $1,117.85 originally assessed against Dowling were abated by defendant State Tax Assessor at the reconsideration hearing.

**3.** 36 M.R.S.A. § 1764 (1978) reads in full:
The [sales and use] tax imposed by chapters 211 to 225 shall be levied upon all isolated transactions involving the sale of motor vehicles or aircraft excepting those sold for resale, and excepting an isolated transaction involving the sale of motor vehicles or aircraft to a corporation when the seller is the owner of a majority of the common stock of such corporation.

**4.** 36 M.R.S.A. § 1861 (1978) provides in relevant part:
A tax is imposed on the storage, use or other consumption in this State of tangible personal property, purchased at retail sale, at the rate of 5% of the sale price.

**5.** 36 M.R.S.A. § 1752(11) (1978) defines and distinguishes retail and causal sales as follows:
"Retail sale" or "sale at retail" means any sale of tangible personal property, in the ordinary course of business, for consumption or use, or for any purpose other than for resale, except resale as a casual sale .... The term "retail sale" or "sale at retail" does not include ... any other isolated transaction in which any tangible personal property is sold, transferred, offered for sale or delivered by the owner thereof, such sale, transfer, offer for sale, or delivery not being made in the ordinary course of repeated and successive transactions of a like character by such owner, such transactions being elsewhere sometimes referred to as "casual sales."

to him and exempt him from payment of use tax.

The Superior Court found as a matter of fact that the two aircraft in question were not purchased for resale and that Dowling was barred from claiming the resale use tax exemption provided in 36 M.R.S.A. § 1764. While he made no special findings of fact or conclusions of law, we must assume that the trial justice resolved all factual issues necessary to sustain his decision in the State Tax Assessor's favor. *See Blackner v. Williams,* 437 A.2d 858, 861 (Me.1981). We will apply the M.R.Civ.P. 52(a) "clearly erroneous" standard of review and uphold the finding if there is "any competent evidence in the record to support it." *Harmon v. Emerson,* 425 A.2d 978, 981 (Me.1981). Moreover, we must give due regard to "the opportunity of the trial court to judge the credibility of the witnesses." *See* M.R.Civ.P. 52(a); *State v. Gove,* 379 A.2d 152, 153 (Me.1977).

■ The evidence amply supported the Superior Court's conclusion that Dowling did not purchase the aircraft for resale. The leases between Dowling and Omni, entered into soon after, if not simultaneously with, Dowling's purchase of the aircraft, were irrevocable and provided for five-year terms. The Superior Court could have reasonably concluded that Dowling's action in entering into such irrevocable leases of substantial length was inconsistent with an intent on the part of Dowling to hold the aircraft for resale. Dowling argues, however, that as the sole owner of Omni Leasing, he was free to modify both the term and the irrevocability of the leases as he chose. That argument fails to account for the fact that on the same day that Omni leased each of the aircraft from Dowling, it became legally obligated to deliver up possession of the aircraft by the terms of its subleases with third parties. Modification of the Dowling-Omni leases so as to permit Dowling to resell the aircraft would put Omni, and indirectly Dowling, in violation of those subleases. The fact that the subleases foreclosed Dowling from selling the planes for several years provides the clearest support for the trial court's conclusion that Dowling purchased the aircraft for his own account as lessor and not for resale.

■ The second part of 36 M.R.S.A. § 1764 provides that no use tax shall be paid on a motor vehicle or aircraft that is sold in an isolated transaction by its purchaser to a corporation in which he has a majority interest. Dowling argues, as he did before the Superior Court, that this exception should apply to his leases of the aircraft to Omni. In so arguing, Dowling focuses on the wrong transaction. Even if Dowling could qualify his leases to Omni as sales to a controlled corporation under section 1764, he would get an exception from taxation only on those transfers. The use tax would remain applicable to the earlier events upon which the Assessor imposed the tax: the use by Dowling immediately upon the transfers of the aircraft to him by the original sellers. Dowling could not escape that earlier tax liability by means of a subsequent tax-exempt transfer to his wholly owned corporation. Not having purchased the aircraft for resale, Dowling became liable for the use tax as soon as he exercised ownership over them. *See* 36 M.R.S.A. §§ 1752(11), 1861.

The entry is:

Judgment affirmed.

All concurring.